UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ALLEN,<br><br>                 Plaintiff,<br><br>          v.<br><br>S. RIMBACH, et.al.,<br><br>                 Defendants. | Case No.: 1:18-cv-01653-NONE-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT PFEIFFER'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 44) |

Plaintiff Kevin Allen is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's motion for summary judgment, filed on June 24, 2020.

**I.**

**RELEVANT BACKGROUND**

This action proceeds Defendant Pfeiffer for violation of the Americans with Disabilities Act (ADA).

After an unsuccessful settlement conference, Defendant Pfeiffer filed an answer to the complaint on June 13, 2019.  On June 18, 2020, the Court issued the discovery and scheduling order.

1

As previously stated, on June 24, 2020, Defendant Pfeiffer filed the instant motion for summary judgment. Plaintiff filed an opposition on August 18, 2020, and Defendant filed a reply on August 24, 2020. Accordingly, Defendant's motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

///
///
///
///

# III.

# DISCUSSION

### A. Summary of Plaintiff's First Amended Complaint

On January 19, 2017, Plaintiff received assistance in filing out a CDCR 1824 reasonable accommodation form based on his dyslexia and request for Adult Basic Education (ABE-1) level class. Plaintiff received a response on February 8, 2017, which informed Plaintiff that there was no indication for him to be on the Learning Disability (LD) list and medical staff did not find any indication of dyslexia.

On February 7, 2017, Plaintiff received assistance in writing to the Warden explaining his need for ABE-1 level class because of his dyslexia.

On May 16, 2017, Plaintiff received assistance in filing an inmate grievance at the second level of review and request to be placed on ABE-1 and rehoused on Facility B yard. Plaintiff was interviewed on May 31, 2017, by R. Clem and Plaintiff showed him ten documents reflecting a reading score of 0.0 and a copy of his trial transcripts which document that he suffers from dyslexia.

On February 2, 2018, Counselor D. Tyson informed Plaintiff that he could not be placed in ABE-1 level class because his supervisor (Hernandez) would not allow it.

Plaintiff has expressed his desire to further his education which was also recommended for early release on parole.

### B. Statement of Undisputed Material Facts[1,2]

1. Between January 19, 2017, and December 3, 2018 (the relevant period), Plaintiff was a prisoner within the custody of the California Department of Corrections and Rehabilitation (CDCR) at Kern Valley State Prison (KVSP). (Pl.'s Am. Compl. at p. 7, ECF No. 11.)

---

[1] Hereinafter referred to as "UMF."

[2] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed. Local Rule 56-260(b). Therefore, defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

1      2.    During the relevant period, Pfeiffer was employed by CDCR as the Warden at KVSP. (Pl.'s Am. Compl. at p. 7, ECF No. 11.)

3      3.    Plaintiff claimed that he has dyslexia, a learning disability recognized by the ADA. (Declaration of Hoffman [Hoffman Decl.] ¶ 6; Pl.'s Depo. 45:2-8).

5      4.    CDCR requires that inmates provide verification of any learning disabilities. (Hoffman Decl. ¶ 5, Ex. A.)

7      5.    CDCR requires verification of learning disabilities through: a diagnosis made by a licensed psychologist, a school based Individualized Education Plan Team (IEPT), or a Probation Officer's report that references public or private school records with an IEP. (Hoffman Decl. ¶ 5, Ex. A.)

11     6.    However, CDCR is not required to test inmates for learning disabilities. (Hoffman Decl. ¶ 5, Ex. A.)

13     7.    At KVSP, decisions on an inmate's request for a reasonable accommodation are handled by the Reasonable Accommodation Pane (RAP). (Hoffman Decl. ¶ 7; Pl.'s Am. Compl. at p. 4, ECF No. 11.)

16     8.    On December 16, 2016, an inmate sent Defendant Pfeiffer a letter on Plaintiff's behalf requesting placement on another Yard to attend Adult Basic Education I (ABE) I classes. (Hoffman Decl. ¶ 7, Ex C; Pl.'s Am. Compl. at pp. 34-35, ECF No. 11.)

19     9.    On January 12, 2017, the Warden's Office responded to Plaintiff's letter encouraging Plaintiff to submit a CDCR 602 Form through the prison's administrative appeal procedure to address his concerns. (Hoffman Decl. ¶ 7, Ex. D; Pl.'s Am. Compl. at p. 37, ECF No. 11.)

22     10.    On January 25, 2017, Plaintiff submitted a Request for a Reasonable Modification or Accommodation, CDCR Form 1824, log number KVSP-0-17-00198. (Hoffman Decl. ¶ 8, Ex. E; Pl.'s Am. Compl. at p. 20, ECF No. 11.)

25     11.    In that Form 1824, Plaintiff asked the RAP Panel to acknowledge his dyslexia and to be assigned to education classes. (Hoffman Decl. ¶, Ex. E; Pl.'s Am. Compl. at p. 20 ECF No. 11.)

27     12.    On February 6, 2017, the RAP Panel denied Plaintiff's request, log number KVSP-0-17-00198, on an interim basis because there was no verification that he had dyslexia, pending receipt

of further information form the KVSP Education Department. (Hoffman Decl. ¶ 10, Ex. G; Pl.'s Am. Compl. at p. 23, ECF No. 11.)

13. On February 24, 2017, the RAP Panel denied Plaintiff's request in full because Plaintiff did not provide any verification that he had dyslexia. (Hoffman Decl. ¶ 10, Ex. H; Pl.'s Am. Compl. at p. 22, ECF No. 11.)

14. The RAP Panel also denied Plaintiff's request because he was already on the waiting list for the ABE I class on A-Yard. (Hoffman Decl. ¶ 10, Ex. H; Pl.'s Am. Compl. at p. 22, ECF No. 11.)

15. Plaintiff did not provide CDCR with any other verification of a qualified learning disability as defined by the ADA. (Hoffman Decl. ¶¶ 9-11, Exs. F-I; Pl.'s Dep. 46:20-25; 47:1-25.)

16. KVSP offers voluntary ABE classes for inmates to attend while on the waiting list. (Hoffman Decl. ¶ 3; Pl.'s Dep. 58:4-6.)

17. Even if he does not have a verified learning disability, Plaintiff could request assistance for any learning issues. (Hoffman Decl. ¶ 8; Pl.'s Dep. 54:4-6.)

18. Plaintiff had the opportunity to attend ABE classes on a voluntary basis at KVSP. (Hoffman Decl. ¶¶ 3, 11; Ex. I; Pl.'s Dep. 32:4-11; 34:8-11, 21-23.)

19. However, Plaintiff decided to voluntarily withdraw from voluntary ABE classes during the relevant period. (Hoffman Decl. ¶ 11, Ex. I; Pl.'s Dep. 44:13-16.)

20. During the relevant period, prison officials did not deny Plaintiff the opportunity to attend voluntary education classes. (Hoffman Decl. ¶ 11; Pl.'s Dep. 44:13-16.)

**C.     Analysis of Defendant's Motion**

Defendant argues the undisputed facts demonstrate that Plaintiff does not have a qualified learning disability and, therefore, cannot maintain an ADA claim. Furthermore, Plaintiff's claim also fails because prison officials did not prevent him from attending education classes at KVSP. In the alternative, Defendant is entitled to qualified immunity.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.

Title II applies to the services, programs, and activities provided for inmates by jails and prisons. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208-13 (1998); Simmons v. Navajo Cnty., 609 F.3d 1011, 1021-22 (9th Cir. 2010); Pierce v. Cnty. of Orange, 526 F.3d 1190, 1214-15 (9th Cir. 2008). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004). Determining whether a modification is reasonable (or even required) is necessarily a fact-specific inquiry, requiring analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." Castle v. Eurofresh, Inc., 731 F.3d 901, 910-11 (9th Cir. 2013) (citation and internal quotation marks omitted).

Plaintiff can only proceed to recover monetary damages, if he can demonstrate "intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). The deliberate indifference standard "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

1. Qualified Learning Disability

Here, Defendant has submitted evidence that Plaintiff does not have a qualified learning disability. (UMF 6, 15-16.) The burden therefore shifts to Plaintiff to prove otherwise. Plaintiff contends that he has evidence that he suffers from dyslexia based on his low TABE reading scores and his lawyer's statement made in his criminal proceedings that Plaintiff has suffered dyslexia since he was a child. However, it is undisputed that CDCR requires verification of learning disabilities through: a diagnosis made by a licensed psychologist, a school based IEPT, or a Probation Officer's report that references public or private school records with an IEP. (UMF 5.) Thus, the fact that Plaintiff's reading level is significantly low does not demonstrate that he has a "qualified learning disability" under the ADA. Further, a statement made by Plaintiff's attorney during criminal proceedings more than twenty years ago, is not relevant because Plaintiff did not provide prison officials with verification of a qualified learning disability. (UMF 6, 15.) That statement is also

1  undermined by the fact that his criminal defense lawyer specifically stated on the record that he had no
2  previous knowledge of any learning disabilities, but recommended to the court that Plaintiff be
3  evaluated.  (Pl.'s Opp'n at pp. 46-47.)  Moreover, at this deposition, Plaintiff admitted that he has not
4  been diagnosed with dyslexia, or any other learning disability.  (Pl.'s Dep. 45:17-25; 46:1-19.)
5  Furthermore, even if Plaintiff had a qualified learning disability, it is undisputed that after Plaintiff
6  requested a reasonable accommodation, prison officials gave him an opportunity to provide
7  verification of his alleged dyslexia, but he failed to do so.  (UMF 16-20.)  Accordingly, Plaintiff's
8  ADA claim against Warden Pfeiffer fails, and summary judgment should be granted.

        2.        <u>Exclusion from Education/Discrimination Because of Learning Disability</u>

10  It is undisputed that prison officials at KVSP did not exclude Plaintiff from attending
11  educational classes on account of a qualified disability.  To the contrary, prison official allowed
12  Plaintiff the opportunity to attend classes on a voluntary basis while he waited for his assigned spot to
13  become available.  (UMF 10-14, 16-20.)  Moreover, it is undisputed that Plaintiff voluntarily withdrew
14  from attending the voluntary ABE classes at KVSP.  (UMF 20.)  In addition, Plaintiff's claim for
15  monetary relief under the ADA also fails because it is undisputed that Warden Pfeiffer did not
16  intentionally discriminate against Plaintiff on account of a qualified learning disability.  (UMF 6, 10-
17  15.)  As set forth above, it is undisputed that Plaintiff did not provide a diagnosis, or any other
18  verification of his alleged dyslexia.  (UMF 6, 10-15.)  However, even if Plaintiff had a qualified
19  learning disability, his claim for monetary relief under the ADA would still fail because it is
20  undisputed that prison officials at KVSP did not exclude him from participation in the education
21  programs, or intentionally discriminate against him, on account of a qualified learning disability.
22  (UMF 16-20.)  Furthermore, even without a showing of a learning disability, it is undisputed that
23  Plaintiff could have requested assistance for any learning issues. (UMF 17.)  Accordingly, there is no
24  evidence that Warden Pfeiffer was deliberately indifferent to Plaintiff's alleged dyslexia because he
25  could not have intentionally discriminated against him on account of a qualified learning disability that
26  Plaintiff did not have.  (UMF 11-15); <u>Duvall</u>, 260 F.3d at 1135.  Therefore, Defendant Pfeiffer's
27  motion for summary judgment should be granted.
28  ///

3. <u>Qualified Immunity</u>

Because the Court has found that Defendant is entitled to summary judgment on the merits of Plaintiff's ADA claim, the Court need not determine whether they he is entitled to qualified immunity.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Pfeiffer's motion for summary judgment be granted; and

2. The Clerk of Court be directed to enter judgment in favor of Defendant Pfeiffer.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 16, 2020**

UNITED STATES MAGISTRATE JUDGE